UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARGARET RUDIN,<br>*Petitioner,*<br>v.<br><br>CAROLYN MYLES, *et al.,*<br>*Respondents*. | Case No. 2:11-cv-00643-RFB-EJY<br><br>**ORDER** |

This habeas matter under 28 U.S.C. § 2254 is pending before the Court for final disposition and also on a Motion for Enlargement of Time by Respondents (ECF No. 83). On August 9, 2019, the Court issued an order directing the parties to address several issues with the federal record. (ECF No. 81.) While both parties have responded, it does not appear that the parties have fully complied with the order.

**Flawed Exhibits**

The prior order referred to multiple flaws in the exhibits and exhibit list filed by Respondents, based on the Court's preliminary review. (ECF No. 81, at 1-2.)

The order clearly stated that the careless manner of filing reflected in Respondents' exhibit filing could not be tolerated:

> The Court therefore is unable to confidently rely upon respondents' exhibits as reflecting a correct, complete (as to relevance), and accurate representation of what was filed in

1

> the state court record. Nor can the Court confidently rely upon respondents' index of exhibits to reliably navigate through the voluminous exhibits in this matter.
>
> The Court cannot accept this situation given its obligations as recognized in *Nasby*. The Court therefore must direct respondents to certify, as specified at the end of this order, that: (a) respondents' staff has re-reviewed every single page of the exhibits and index of exhibits on file; (b) all errors in the exhibits and index of exhibits have been corrected; and (c) to the best of respondents' knowledge, there are no more errors in the exhibits and index of exhibits filed in the federal record.
>
> The Court understands that the record is voluminous, filling the equivalent of five copy paper boxes in hard copies. But that heightens – not lessens – the need to do the filing right.
>
> The Court further understands that it is not generally feasible for counsel to individually prepare the state court record exhibits for filing, and that counsel necessarily must rely on staff assistance. In the final analysis, however, counsel's duty to file a correct representation of the underlying state court record materials is nondelegable. The Court trusts that, after corrected materials are filed in response to this order, a second order in this regard will not be necessary. If it is, that order instead will direct counsel to personally review all of the exhibits, again page by page, and certify the correctness of his filing, without reliance on any delegation to staff whatsoever. The careless manner of filing reflected in the multiple examples noted in this order cannot be tolerated.

(ECF No. 81, at 2.)

Respondents' thereafter filed purportedly corrected exhibits. Counsel certified "that Respondents have, to the best of their ability, reviewed the state court record in this matter and endeavored to correct any errors in the index." (ECF No. 84, at 2.)

However, the Court is still encountering substantial flaws in the state court record exhibits filed by Respondents, in what so far has been only a partial continuing review of the record. For example, Exhibit 204, a transcript from a day early in the trial, stops

2

midsentence on page 200 and clearly is missing over 109 pages.  (Compare ECF No. 66-8, at 5 with ECF No. 66-9, at 103.)

The Court finds it difficult to believe that a conscientious, competent, and thorough second review of the state court record exhibits filed herein could have missed such a glaring flaw.  Moreover, the materials filed by Respondents in response fail to correct numerous errors, including those specifically identified in the Court's prior order.

The order noted that Exhibits 59 and 61 have apparent imaging/scanning errors.  Corrected exhibits have not been filed, and Respondents' Notice of Partial Compliance provides no explanation.  (See ECF Nos. 58-19, 59-1, 84.)

At least three of Respondents' replacement exhibits have the same scanning error as the original exhibits.  (Compare ECF No. 65-12 at 70 with ECF No. 85-10 at 298; compare ECF No. 65-19 at 94-95 with ECF No. 85-11 at 209-10; compare ECF No. 66-18 at 35 with ECF No. 85-14 at 35.)  It is not clear to the Court exactly what, if anything, was corrected by the replacement exhibits.  It is highly unlikely that the Court Reporter's underlying original transcripts in the official state court record had errors of this nature.

The Court acknowledges the extensive effort expended by counsel in responding to the prior order.  However, these continued patently obvious flaws in the record presented to this Court cannot—and will not—be tolerated again.  This federal habeas case has been pending for over nine years.  The combined state and federal litigation further span two decades, with the 76-year-old petitioner recently having been paroled from physical custody on the second of her two ten-to-life sentences.  The Court has a fundamental obligation—regardless of the ultimate outcome—to see that justice, to all concerned, is not denied by further delay.  And it must have a reliable, unflawed record upon which to do so.

The Court is now forced to issue the second order referred to in the prior order.  Respondents' counsel must—individually—review the state court record exhibits on file in this matter—individually, page by page—and thereafter personally certify to this Court following that review that all errors and flaws in the federal filing of the state court record

exhibits have been corrected.  If the Court finds further errors thereafter, the Court will be left with no other alternative than to sanction Respondents' counsel personally for the failure to provide the Court with a reliable record after it has issued two compliance orders. Given the duration of these proceedings, further failure in this regard will not be tolerated; and sanctions instead will be imposed personally on counsel, with a proviso against indemnification of counsel by the State.  Respondents' counsel must take all steps necessary to assure that the Court has a reliable record upon which to base a decision.

**Video of Opening Statement**

In the First Amended Petition, Petitioner made numerous references to an "Exhibit A" with a video of the Defense's opening statement.  Yet there was no such video in the federal record. (See ECF No. 81 at 4.)  At this late juncture in this case—with an Answer and Reply having been filed and the case submitted for decision—the Court established a procedure governing the consideration of video that was not an official state court record.  The Court ordered that "[P]etitioner, if she wishes for the Court to consider any video exhibits not then on file [at the time of Respondents' responses], *shall file a motion* for the admission of the video exhibits, *supported by directly apposite authority* along with presentation of the proposed exhibits as manually-filed exhibits submitted *with the motion.*" (ECF No. 81, at 6.) (emphasis added.)

Petitioner did not file such a motion as directed by the Court.  Her counsel instead filed, along with a Second Amended Petition, an attachment designated as "Exhibit A," which references the video exhibit and includes declarations by Petitioner's current counsel and a juror from the 2001 trial. (ECF Nos. 86-1, 86-2, 86-3, 87.)  Counsel then overnighted a flash drive with the video itself to the Court's Courtroom Administrator.

In his Declaration, counsel asserts, *inter alia*, that:  (a) "the trial was broadcast nationally on Court TV" and also locally in Las Vegas (ECF No. 86-2 at 1); (b) former postconviction counsel Christopher Oram "had boxes full of the VHS videotapes of Rudin's trial" (id.); (c) Petitioner told current counsel that "she had a friend in Las Vegas who taped the trial as it was aired on local TV" and these are the videotapes counsel

4

received from Oram (id.); (d) "[t]he tapes were dirty and had dust and mouse droppings in many of the boxes" (id.); (e) he "was able to digitize many of the tapes of the trial" (id. at 2); and (f) "none of the video of Amador's opening statement was altered in any way, other than sometimes there were issues of syncing the video and audio" (id.)

It is therefore clear that the video is not an official state court record, nor a copy obtained directly from a news source that broadcast the trial. The video provided is instead a "bootleg" copy of a television broadcast made by Petitioner's friend that was digitized by Petitioner's counsel nearly two decades later, with counsel of record seeking to serve as a foundation witness for its introduction as an exhibit.[1]

The Court directed that the admissibility of any such unofficial video be determined on a contested motion because there is a substantial legal question as to whether the Court can properly consider it, in lieu of or in addition to the extant official transcript and regardless whether the Court ultimately applies *de novo* review. (See ECF No. 81 at 4 n.3.) Petitioner seeks to present an exhibit subject to a substantial legal question after the pleadings have been closed and after referring extensively to it but failing to produce it over three years ago in the First Amended Petition. The Court directed that the substantial legal question be addressed on a contested motion so that the matter could be definitively resolved prior to a final decision in the case.

The Court's order that Petitioner must present apposite authority means that Petitioner must present authority establishing that a federal court can consider an unofficial video of a state criminal trial proceeding when adjudicating a habeas petition where the official transcript of that proceeding exists. Petitioner's argument urging that the video is properly authenticated does not meet this standard. Petitioner presents no apposite case law or other authority on this controlling issue.

Judicial and legislative rules regarding broadcasts of criminal trials implicate substantial public policy concerns regarding the integrity of court judgments. See, e.g.,

---

[1] The prior order directed Respondents first to clarify whether there was an official video record from the trial. (ECF No. 81 at 5.) Respondents did not do so. Regardless, Petitioner's response clearly establishes that the video is not an official state court record.

5

Hollingsworth v. Perry, 558 U.S. 183, 196-98 (2010). The Supreme Court of Nevada rules authorizing the broadcast of state judicial proceedings clearly provide now and at the relevant time, that the broadcast material does not constitute an official record of the proceeding:

> **Official record.** The official court record of any proceeding is the transcript of the original notes of the court reporter or court recorder made in open court. Videos, photographs or audio reproductions made in a court proceeding as a result of these rules shall not be considered as part of the official court record.

Supreme Court Rule 241(2).[2] This rule precludes reliance upon an unofficial video of trial proceedings on an appeal from a conviction. See, e.g., Fugate v. Commonwealth, 62 S.W.3d 15, 21 (Ky. 2001).

It is one thing to receive new evidence on relevant underlying factual matters in federal court on *de novo* review. It is another to consider an unofficial broadcast of a trial in lieu of or in addition to the official state court record, where an official transcript of the proceeding is in the federal record and the state Supreme Court's rules dictate that the official transcript rather than a broadcast constitutes the official state court record. Absent some directly apposite, binding authority supporting the consideration of an unofficial broadcast of a trial, such a broadcast should not be considered in a federal habeas proceeding where the official transcript is available, as it is here.[3]

---

[2] Prior to a 2011 amendment the pertinent language read: "Official Record. Reproductions made in court as a result of these rules shall not be considered as part of the official court record." See Christo Lassiter, An Annotated Descriptive Summary of State Statutes, Judicial Codes, Canons, and Court Rules Relating to Admissibility and Governance of Cameras in the Courtroom, 86 J. Crim. L. & Criminology 1019, 1056 (1996).

[3] In support of her authenticity argument, Petitioner presents, *inter alia*, a declaration from a juror that the video corresponds to her observation of the opening statement nearly two decades earlier at trial. (ECF Nos. 86-2, 87.) Petitioner further suggests that the video is "self-authenticating" because of the existence of the official transcript of the opening statement. (ECF No. 86-1 at 2.) At the same time, however, Petitioner refers to transcription errors in the official transcript. (Id.) Petitioner therefore suggests that the unofficial video (purportedly rendered authentic and admissible due to the existence of the official transcript) rather than the official transcript is the conclusive source as to what was said during the opening statement. In all events, the authenticity argument does not address the threshold legal question as to whether the unofficial video may be considered in the first instance. The Court expresses no opinion as to potential issues raised by counsel of record serving as a witness in this matter and/or as to the scope of permissible testimony by the trial juror.

When the Court directs a party to follow a particular procedure, as it did in its prior order, counsel must comply absent an order granting reconsideration. Petitioner must comply with the procedure outlined in the Court's orders to secure possible consideration of the video exhibit, for the reasons discussed *supra*.[4]

### Retainer Agreement

The Court acknowledges Respondents' efforts to obtain a copy of the Retainer Agreement—currently a sealed document on the "left side" of the state court record—by filing a Motion to Unseal in the state district court on September 20, 2019. The minutes on the online docket for the state district court reflect that the court orally granted a motion to unseal the retainer agreement on November 25, 2019, with the State to furnish a written order. This Court will allow Respondents a reasonable time to file a copy of the Retainer Agreement as an exhibit in the federal record.

### Conclusion

The Court again acknowledges the extensive effort expended by both counsel in responding to the prior order. Nonetheless, counsel failed to fully comply.[5] Counsel need to carefully adhere to and fully and expeditiously comply with the Court's orders. After nearly two decades of litigation pertaining to this conviction, this habeas action must be resolved justly, promptly, and on an appropriate record. (See also ECF No. 81 at 4.)

IT IS THEREFORE ORDERED that, within **sixty (60) days** of entry of this order, Respondents' counsel shall: (1) personally review, page by page and without delegation to staff, each exhibit filed by Respondents herein, and compare all errors therein to the original state court record; (2) ensure that corrected exhibits are filed herein that correct

---

[4] The Court will not review the video on YouTube as suggested by counsel. (ECF No. 86-2 at 2.) The Court will not adjudicate a federal habeas action based upon an unofficial video uploaded to a video-sharing platform that is neither part of the federal nor state court record.

[5] In addition to the instances noted, Petitioner failed to properly cite exhibits in her pleading. The order directed Petitioner to cite exhibits filed by Respondents "by reference to the ECF number and electronic docketing page number of the filing in the federal record." (ECF No. 81 at 5.) Counsel instead cited exhibits by exhibit and page number in the underlying document. The Court will not make counsel correct the substantial filing, but both counsel must exercise greater care in following the Court's orders.

all flaws in Respondents' exhibits that are not also contained in the original state court record; and (3) certify in an express, separate, standalone notice filed with this Court specifically that: (a) counsel has personally reviewed, page by page and without delegation to staff, each exhibit filed by Respondents herein; and (b) to the best of counsel's knowledge and belief, following a diligent effort to fully comply with this order, all flaws in Respondents' exhibits that are not contained within the original state court record have been corrected.  The notice shall specifically identify any flaws that remain in Respondents' exhibits that are also present in the original state court record.

IT IS FURTHER ORDERED that no substitutions of counsel for Respondents will be recognized by the Court that would relieve current counsel of the obligation to timely comply with this order.

IT IS FURTHER ORDERED that any substitute exhibits filed in response to this order shall be designated as such with a suffix to the prior exhibit or partial exhibit number in a manner that distinguishes the corrected exhibit from the prior exhibit that is being corrected, including any prior attempts to correct the exhibit. Respondents should not refile the entire set of state court record exhibits including exhibits already on file that have no errors.

IT IS FURTHER ORDERED that within **sixty (60) days** of entry of this order, Respondents shall file a copy of the Retainer Agreement between Michael Amador and/or his firm and Margaret Rudin.  Given that the state district court has acted to unseal the Retainer Agreement, the copy of the agreement need not be filed under seal in this matter.

IT IS FURTHER ORDERED that Respondents' Motion for Enlargement of Time (ECF No. 83) is GRANTED *nunc pro tunc*.

IT IS FURTHER ORDERED that the flash drive video exhibit submitted by Petitioner is rejected at this time without prejudice, for failure to follow both the Court's prior order and Local Rule LR IC 1-1(d) regarding manual filing.  Petitioner shall have **thirty (30) days** within which to file: (a) a motion for the admission of the video exhibit, (b) supported by directly apposite authority, in addition to (c) simultaneous submission of

the proposed exhibit as a manually-filed exhibit in the manner required by Local Rule LR IC 1-1(d).  Briefing on the motion must be in accordance with the local rules and requests for extension of time are strongly discouraged. Repeated failure to follow the procedures required by this and the prior order will result in the exclusion of the video exhibit from the Court's consideration.

The Court requests that the Courtroom Administrator return the flash drive to counsel in a manner consistent with the Clerk of Court's practices.

IT IS FURTHER ORDERED that any requests for extension of time with respect to any deadline set by this order are strongly discouraged.  Any such requests for extension of time based upon scheduling conflicts with matters in this or any other court, including the Ninth Circuit, must indicate that: (a) the other matter was filed prior to the original April 25, 2011, filing date of this matter; and (b) counsel has timely provided the other court with this order, and that court has both acted upon and denied a timely request for extension of time sought in full or in part due to the deadlines set by this order.  A copy of the order(s) denying the request(s) for extension of time in the other court(s) must be attached with the Motion for Extension of Time.  This Court reiterates its intention to secure full compliance with this order and bring this matter to a conclusion as expeditiously as possible, subject only to a contrary order by the Ninth Circuit.

DATED: July 15, 2020.

_____
RICHARD F. BOULWARE, II
United States District Judge